No. 22-16400

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

———————————————

STORM CATTOCHE, an individual,
*Plaintiff-Appellant*

v

UNITED AIRLINES, INC., a Delaware corporation; STEPHANIE LOCHMANN MACLAREN, an individual; ANDREW WILLSON, an individual; and DOES 1–10, inclusive;
*Defendants-Appellees*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CIVIL CASE NO. 3:21-cv-01686-JD

———————————————

APPELLANT'S OPENING BRIEF

———————————————

ADVOCATES FOR APPELLANT

FORTHRIGHT LAW, P.C.
DOW W. PATTEN, ESQ. (SBN 135931)
50 California St. Suite 1500
San Francisco, California 941111
Telephone 415-228-6848  Facsimile 415-228-6876
dow@forthrightlaw.com

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................ i

TABLE OF AUTHORITIES.......................................................................... ii

I. INTRODUCTION........................................................................... 1

II. STATEMENT OF JURISDICTION............................................... 1

III. STATEMENT OF THE ISSUES..................................................... 2

IV. STATEMENT OF THE CASE ........................................................ 2

    A. STATEMENT OF FACTS ................................................... 2

V. SUMMARY OF THE ARGUMENT .............................................. 7

VI. LAW AND ARGUMENT ............................................................... 9

    A. STANDARD OF REVIEW................................................... 9

    B. THE THIRD AMENDED COMPLAINT STATED FACTS SUPPORTING PLAUSIBLE CLAIMS FOR RELIEF................................................................................ 10

        1. The Scheduling Order............................................... 11

        2. Direct Evidence of Retaliation................................. 12

        3. Comparator Information.......................................... 13

VI. CONCLUSION............................................................................... 13

# **TABLE OF AUTHORITIES**

## UNITED STATES SUPREME COURT CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).......................................................... 9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, (2007) ........................................ 11

*Conley v. Gibson,* 355 U.S. 41, 47 (1957)...................................................... 10, 11

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)....................................................... 9

## FEDERAL AUTHORITIES

*Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ........... 9

*Barker v. RiversideCounty Office of Education*
584 F.3d 821, 824 (9th Cir. 2009)........................................................................ 9

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996).................... 10

*Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)................. 9, 10

*Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)...................................... 9

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ....................... 9

*King Cnty. v. Rasmussen*, 299 F.3d 1077, 1088 (9th Cir. 2002) .......................... 9

*Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002)............................... 10

## RULES

Fed. R. Civ. P. 16(b)............................................................................................ 12

**I.     INTRODUCTION**

Plaintiff-Appellant Storm Cattoche ("Cattoche") is employed by Defendant United Airlines, and was formerly employed as an International Purser with United Airlines. Plaintiff-Appellant raised complaints regarding pay and improper classification of her fellow flight attendants.

After raising these complaints, Plaintiff-Appellant was harassed and retaliated against in the workplace, suffering a variety of adverse actions by supervisory individuals and was removed from her International Purser duties.

The District Court below erroneously violated Fed. R. Civ. P. 16 by not issuing a scheduling order for more than a year after the scheduling conference, failing to provide relief from the 52 day period of fact discovery, and dismissed the entirety of Appellant's complaint at the pleading stage by ignoring specific allegations and by failing to recognize reasonable inferences from the facts alleged in the operative Complaint ("Complaint").

**II.     STATEMENT OF JURISDICTION**

The District Court had diversity jurisdiction over Appellant's claims against Defendant United Airlines. 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

On August 26, 2022, the District Court granted Appellees' Motion to

Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ER 003) dismissing without leave to amend as to Defendant United Airlines. Plaintiff filed a Third Amended Complaint (ER 076) on September 8, 2022, and filed a Voluntary Dismissal on September 13, 2022 (ER 089). Appellant timely filed a Notice of Appeal on September 14, 2022 (ER 092). *See* Fed. R. App. P. 4(a)(1)(A).

### III. STATEMENT OF ISSUES

1. Did the Second Amended Complaint contain allegations of fact sufficient to state plausible claims for relief?

2. Does a District Court abuse its discretion to hold under advisement a 12(b)(6) Motion to Dismiss, without issuing a Case Management Order, and no Answer by Defendants, and subsequently issue a Case Management Order that sets a period of fact discovery of 52 days, and seven days thereafter rule upon the Motion to Dismiss, held under advisement for 208 days?

### IV. STATEMENT OF THE CASE

#### A. STATEMENT OF FACTS

Plaintiff-Appellant Ms. Cattoche is a long-term employee of United Airlines, commencing her employment in February of 1989 as a flight attendant, and eventually worked her way up and was promoted to the position of International

Purser. The position of International Purser at United is held by a flight attendant who acts as liaison between the "flight deck", including pilots, captains, and first officers, and the flight attendants, and is paid a premium over and above the wages of flight attendant for performing such liaison services.

As a flight attendant and International Purser, Plaintiff-Appellant has dutifully performed the responsibilities or her position, receiving numerous commendations for her work. Based in the San Francisco International Airport ("SFO"), Plaintiff consistently performed International Purser duties in an exceptional fashion, receiving numerous accolades and positive performance evaluations. (ER 078) In December 2019, changes began to occur at SFO which caused Plaintiff-Appellant and other Pursers concern, including an email from management titled "PLEASE READ EMAIL" to members of United management and all International Pursers based out of SFO. The email changed the terms and conditions of the International Purser role because it required, for the first time, that International Pursers instruct and manage Flight Attendant demeanor and appearance: "Please remind your crews to have fun & talk with customers."

United management required International Pursers—as opposed to managers or supervisors—to brief and instruct Flight Attendants: "please brief your crews with a concerted effort towards being friendly and approachable." These changes

were material changes to the terms and conditions of Plaintiff-Appellant's employment as an International Purser because International Pursers do not have managerial or supervisory authority over Flight Attendants.

Plaintiff-Appellant sent an email to management and all International Pursers asserting that United's new job requirements should be forwarded "DIRECTLY to ALL flight attendants and not just to the purser population, and or having supervisor present who can communicate the company expectations at briefing." From Plaintiff's perspective, United was "putting pursers in a supervisory or managerial role [. . .]."

Plaintiff received a number of emails and messages from other International Pursers regarding United management's changes to the terms and conditions of the International Purser role. On December 21, 2019, Plaintiff emailed all SFO-based International Pursers requesting permission to compile one email of comments. The purpose was so "management can clearly see the angst and frustration [the recent email] has generated." Plaintiff gathered these comments over the next three weeks.

On January 11, 2020 at 9:30am, Plaintiff sent a seven-page email to all United SFO managers and supervisors containing thirty-one "COMMENTS AND FEEDBACK" about United's December changes. Plaintiff prefaced the comments:

4

> We respectfully requests that our comments and suggestions and taken under consideration and advisement in upcoming meetings, policy changes and discussions as it relates to the purser role and responsibilities.

United management never directly responded to Plaintiff's email.

Meanwhile, Base Director Andrew Willson and the United SFO management team had organized an International Purser Forum. The purpose of the Forum was for managers, supervisors, and International Pursers discuss the main points and some of the successes of the International Purser program. Willson and other members of United SFO management, including Lochmann MacLaren, attended in their capacity as United managers and supervisors. International Pursers who attended would not be compensated.

On January 11, 2020 at 2:34pm, Base Director Andrew Willson sent an invitation to all International Pursers to attend the International Purser Forum on January 15. This invitation was sent by a third party, Paperless Post. One minute later, at 2:35pm, an automated reply from Paperless Post was sent to all International Pursers, including Plaintiff, with the content:

> You replied "attending"

This caused Plaintiff to believe that United mandated her and other International Pursers to attend the International Purser Forum without pay or reporting time pay.

5

Plaintiff also believe that the Forum spurned the thirty-one "COMMENTS AND FEEDBACK" in Plaintiff's email sent to United managers and supervisors earlier in the day. Later on January 11, management forwarded Plaintiff's "COMMENTS AND FEEDBACK" email to Andrew Willson the Base Manager (at 11:30pm, with the commentary, "FYI"); and, at 11:45pm, to Kurt Wouters, United's Manager of the International Purser Program. In Lochmann MacLaren's email to Wouters, Lochmann MacLaren commented:

> A performance meeting is planned with Storm this week. There has been an additional and albeit separate issue that regards her performance as an onboard leader.

Plaintiff was unaware of these communications among UNITED managers and supervisors when she filed her Second Amended Complaint.

Thirty-six hours later, at 11:52 am January 13, Ms. Cattoche sent an email to Management which constituted protected activity, titled "DECLINE TO ATTEND PURSER MEETING". In it, Plaintiff refused to attend the "'voluntary' meeting on personal time, without compensation." Plaintiff perceived United's action of sending "will attend" confirmations compelled attendance without pay, a violation of California Wage Order 4-2001, 8 CCR §11040.

United managers and supervisors did not directly respond to Plaintiff's

6

January 13 email. However, they discussed its contents internally. At 2:32pm, John Slater (Senior Vice President, Inflight Services) forwarded Plaintiff's "DECLINE TO ATTEND PURSER MEETING" email to Dean Whittaker (Managing Director, Global Base Operations) and Kurt Wouters, declaring:

> We talked about exiting people from the purser program who aren't the right fit. Storm seems to fit the profile of someone who sees their position as a burden rather than an opportunity to lead. I think the next invite Storm needs to receive is the opportunity to return to a non-purser role.

Nine minutes later, Wouters replied:

> Stephanie, Storm's supervisor call me this morning and they are having a conversation with her and she wanted to know if they could remove her [. . .]
> Thank you for your feedback, I agree with you [. . .] I totally agree that this role is not for her.

The foregoing quotes are contained in Plaintiff-Appellant's Third Amended Complaint (ER 080, 081), filed after Plaintiff had obtained the information through the shortened discovery process.

## V.   SUMMARY OF THE ARGUMENT

Plaintiff-Appellant adequately stated all necessary elements of each of her claims, except for those questions of fact incapable of resolution at the pleading stage.   Plaintiff-Appellant provided as much detailed factual information as she

7

had in her possession, yet the District Court dismissed her claims against Defendant United.

Despite holding an initial Case Management conference on June 24, 2021, the District Court did not issue a Scheduling Order until more than a year later on June 28, 2022 (ER 067). During that time period, serial 12(b)(6) motions were held under advisement, and the parties did not conduct discovery.

Upon issuance of the Scheduling Order, the parties jointly sought relief from the scheduling order by Stipulation (ER 069), which the court denied, stating only "ORDER. For Dkt. No. 41, the request is denied. Motions to dismiss do not toll discovery. The Court's scheduling order will not be revised." (ER 099). The parties hurriedly conducted discovery during this period, providing discovery letters to the Court to obtain necessary discovery (ER 099-100). However, before Plaintiff could apprise the Court of the results of that discovery, including the direct evidence of retaliation, and specific comparator evidence for her discrimination claims, the Court issued its Order dismissing the Second Amended Complaint without leave to amend Plaintiff's discrimination and retaliation claims against United. (ER 003)

For these reasons, Plaintiff-Appellant respectfully requests that this Court reverse and remand.

## VI. LAW & ARGUMENT

### A. STANDARD OF REVIEW

The standard of review is *de novo* for Fed. R. Civ. P. 12(b)(6) dismissals. *King Cnty. v. Rasmussen*, 299 F.3d 1077, 1088 (9th Cir. 2002). At the pleading stage, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Yet neither *Iqbal* nor *Twombly* refute the fundamental tenet that all reasonable inferences from the alleged facts must be drawn in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Education* 584 F.3d 821, 824 (9th Cir. 2009); *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

As a practical matter, Rule 12(b)(6) dismissals should be granted only in the relatively unusual situation where an "insuperable bar" to relief exists on the face of the pleading. *Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citation and internal quotation marks omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds). Fact-intensive issues are not appropriately resolved

9

at the pleading stage. See e.g., *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

When the complaint is dismissed without leave to amend, a dismissal under FRCP 12(b)(6) constitutes "a 'judgment on the merits' to which res judicata applies." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002).

### B. THE THIRD AMENDED COMPLAINT STATED FACTS SUPPORTING PLAUSIBLE CLAIMS FOR RELIEF.

As set forth below, Plaintiff was able to obtain specific direct evidence of retaliation and a number of comparators supporting her sex and race discrimination claims, during the truncated discovery period and pleaded these specific facts and evidence in the Third Amended Complaint. (ER 076-088). That Complaint, filed after the Court dismissed the retaliation and discrimination claims in the Second Amended Complaint (ER 006-019) without leave to amend, contained facts which support plausible claims for relief. Accordingly, the District Court's Order and Judgment should be reversed and this matter remanded.

In ruling upon a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled

to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal citations and quotations omitted).

### 1. The Scheduling Order

Federal Rules of Civil Procedure Rule 16 provides in pertinent part:

> b) Scheduling.
> (1) Scheduling Order. Except in categories of actions exempted by local rule, the district judge—or a magistrate judge when authorized by local rule—must issue a scheduling order:
>
> (A) after receiving the parties' report under Rule 26(f); or
>
> (B) after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference.
>
> (2) Time to Issue. The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.

Fed. R. Civ. P. 16(b). Here, the District Court held the scheduling conference on

11

June 24, 2021 (ER 098), but waited for more than a year to issue the scheduling order (ER 067). The parties did not conduct discovery during this time period.

### 2. Direct Evidence of Retaliation

Plaintiff's Third Amended Complaint cited the specific contents of emails amongst management as to which Plaintiff was previously unaware when she filed her Second Amended Complaint. (ER 080, ¶19) Those emails commented upon Plaintiff's protected activity email, and were forwarded through base and headquarters management. (ER 080 ¶¶ 19-22). The chain which began with Plaintiff's protected activity, and was subsequently commented upon by a Senior Vice President stating

> We talked about exiting people from the purser program who aren't the right fit. Storm seems to fit the profile of someone who sees their position as a burden rather than an opportunity to lead. **I think the next invite Storm needs to receive is the opportunity to return to a non-purser role.**

(ER 080), emphasis added. This demonstrates that what Plaintiff alleged as retaliation was indeed not only plausible, but provable. The Court's actions with respect to scheduling turned Rule 12 on its head. After Plaintiff rushed to begin discovery (without an answer by United) based on the Scheduling Order (ER 067) Plaintiff's efforts were undercut by the District Court holding under advisement a

12

ruling for 208 days, and was not given the opportunity to apprise the Court of the substantial and direct evidence of retaliation that exists.

Accordingly, Plaintiff-Appellant requests that District Court's Order (ER 003), be reversed and this matter remanded.

### 3. Comparator Information

The short period of discovery also produced specific comparator information, which Plaintiff-Appellant was able to present in her Third Amended Complaint, demonstrating the plausibility of her sex and race discrimination claims. Plaintiff-Appellant identified by name her co-workers who were not in her protected class and the specific similar conduct that Plaintiff was alleged to have committed, and a lack of similar discipline. (ER 082 ¶¶ 26, 27). Again, had this matter followed ordinary procedure, Plaintiff would have been able to present the evidence supporting her claims for relief at summary judgment or trial. The District Court's failure to follow the Fed. R. Civ. P. 16(b) caused a miscarriage of justice and the matter should be reversed and remanded with instructions.

## VI. CONCLUSION

Plaintiff-Appellant obtained substantial evidence supporting her plausible

claims of discrimination and harassment, and direct evidence of retaliation. Rather than permit Plaintiff the ability to identify such evidence proving her claims, either as more specific allegations in her pleadings or as proof at summary judgment, the District Court erred, turning Rules 12 and 16 on their heads, resulting in a miscarriage of justice. The Court's Order Regarding Second Amended Complaint should be reversed and remanded for further proceedings.

Respectfully submitted,

Dated December 16, 2022                                FORTHRIGHT LAW, P.C.


By  */s/ Dow W. Patten*
DOW W. PATTEN
Attorneys for Appellants

14

## **CERTIFICATE OF COMPLIANCE**

I, DOW W. PATTEN, counsel of record for Plaintiff-Appellant, hereby certify that the foregoing Appellant's Opening Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2724 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Apache OpenOffice 4.1.10, in 14-point Times New Roman.

Dated: December 16, 2021                    FORTHRIGHT LAW, P.C.

                                            */s/ Dow W. Patten*
                                            DOW W. PATTEN