No. 22-16400

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

STORM CATTOCHE, an individual,

Plaintiff-Appellant,

v.

UNITED AIRLINES, INC., a Delaware corporation; STEPHANIE
LOCHMANN MACLAREN, an individual; ANDREW WILLSON, an
individual; and DOES 1–10,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of California

Case No. 3:21-cv-01686-JD
Hon. James Donato

---

## APPELLEES' ANSWERING BRIEF

---

Kim M. Watterson
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
Tel: 213.457.8037
Fax: 213.457.8080

Michele Haydel Gehrke
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105
Tel: 415.543.8700
Fax: 415.391.8269

Brian K. Morris
REED SMITH LLP
2501 N. Harwood
Street, Suite 1700
Dallas, TX 75201
Tel: 469.680.4200
Fax: 469.680.4299

## RULE 26.1 CORPORATION DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, United Airlines, Inc. stated as follows:   United Airlines, Inc. is not a publicly-traded corporation. United Airlines, Inc. is a wholly-owned subsidiary of United Airlines Holdings, Inc. (NYSE: UAL).

*/s/ Kim M. Watterson*
Kim M. Watterson
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
kwatterson@reedsmith.com

Michele Haydel Gehrke
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105
mgehrke@reedsmith.com

Brian K. Morris
REED SMITH LLP
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
bmorris@reedsmith.com

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................. 1

II. STATEMENT OF JURISDICTION .......................................... 3

III. QUESTIONS PRESENTED .................................................... 4

IV. STATEMENT OF THE CASE ................................................ 4

    A. Cattoche's Initial And First Amended Complaint ...................... 4

    B. The Court Schedules And Conducts The Initial Case Management Conference ................................................................. 5

    C. The Court Denies A Joint Request For A Discovery Stay Pending Resolution of the Pleadings ............................................. 6

    D. The Court Grants United's Motion To Dismiss The FAC But Grants Leave to Amend ......................................................... 6

    E. The District Court Issues the Scheduling Order and Again Denies a Joint Request to Adjust Case Deadlines ................................ 7

    F. Summary Of The SAC, United's Motion To Dismiss The SAC, And The District Court's Dismissal Order ................................... 8

        1. Summary of the Second Amended Complaint ................... 8

        2. The District Court Grants The Motions To Dismiss The SAC, Cattoche Repleads The Claims Not Dismissed With Prejudice, And Then Voluntarily Dismisses That Amended Complaint With Prejudice .................................................... 12

V. STANDARD OF REVIEW ..................................................... 13

VI. SUMMARY OF ARGUMENT ................................................. 14

VII. ARGUMENT ................................................................... 15

    A. By Not Presenting Any Arguments Directed To Showing That Her SAC Pleaded Plausible Claims For Relief, Cattoche Waived All Arguments And Issues That Are The Subject of This Appeal ....... 15

    B. The Timing Of The District Court's Scheduling Order Did Not Constitute Reversible Error .............................................. 18

        1. The District Court Did Not Violate Rule 16 ................... 19

2. Even If The District Court Abused Its Discretion In Its Issuance Of The Scheduling Order It Was A Harmless Error Because It Did Not Prejudice Cattoche.........................22

C. The District Court Properly Dismissed Cattoche's SAC Because It Does Not State A Plausible Claim For Relief.........................27

1. The SAC Does Not Contain Sufficient Factual Allegations to State a Section 1102.5 Retaliation Claim ......................28

2. Dismissal of Cattoche's Gender and Race Discrimination Claims Was Proper Because They are Unsupported Non-Conclusory Factual Allegations..................................33

3. The Court Does Not Need to Address Cattoche's Harassment and IIED Claims ..................................................36

VIII. CONCLUSION ........................................................................43

STATEMENT OF RELATED CASES ..............................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
  545 F.3d 733 (9th Cir. 2008) ……………………………………………… 13

*Abdul-Haqq v. Kaiser Emergency in San Leandro*,
  2017 U.S. Dist. LEXIS 19520 (N.D. Cal. Feb. 10, 2017) ………………… 39

*Aguilar v. Avis Rent A Car Sys., Inc.*
  21 Cal.4th 121 (1999) …………………………………………………… 37, 38

*Alpha Kappa Alpha Sorority, Inc. v. Converse Inc.*,
  175 Fed. Appx. 672 (5th Cir. 2006) ……………………………………… 20

*Anneny v. Lockheed Missiles and Space Co.*,
  88 Cal. App. 3d 531 (1979) ……………………………………………… 41

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) …………………………………………………… 27, 28

*Avina v. United States*,
  681 F.3d 1127 (9th Cir. 2012) …………………………………………… 40

*Barton v. Del Toro*,
  2023 U.S. Dist. LEXIS 12341 (S.D. Cal. Jan. 24, 2023)…………………… 26

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) …………………………………………………… 12, 27

*Benton v. Baker Hughes*,
  623 Fed. Appx. 888 (9th Cir. 2015) ……………………………………… 42

*Biro v. Keyes*,
  2022 U.S. Dist. LEXIS 130692 (C.D. Cal. July 20, 2022)………………… 20

*Burnell v. Marin Humane Soc'y*,
  2015 U.S. Dist. LEXIS 150607 (N.D. Cal. Nov. 5, 2015)………………… 41

*Carter v. Escondido Union High Sch. Dist.*,
148 Cal. App. 4th 922 (2007) ....................................................... 30

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ....................................................... 37

*Consumerdirect, Inc. v. Pentius, LLC*,
2022 U.S. Dist. LEXIS 91984 (C.D. Cal. Apr. 4, 2022) ...................... 42

*Corey Lea Inc. v. United States DA*,
2013 U.S. App. LEXIS 26305 (6th Cir. Aug. 7, 2013) ........................ 22

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ....................................................... 28

*Day v. Orrick, Herrington & Sutcliffe, LLP*,
2022 U.S. App. LEXIS 24319 (9th Cir. Aug. 29, 2022) ...................... 17

*Dias v. Burberry Ltd.*,
2021 U.S. Dist. LEXIS 108200 (S.D. Cal. June 9, 2021) ..................... 32

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ....................................................... 27

*Eshun v. United Steel, Paper & Forestry, Rubber, Mfg., Energy,
Allied Indus. & Serv. Workers Int'l Union*,
2020 U.S. Dist. LEXIS 234671 (E.D. Cal. Dec. 14, 2020) ................... 34

*Ferretti v. Pfizer Inc.*,
2013 U.S. Dist. LEXIS 4730 (N.D. Cal. Jan. 10, 2013) ...................... 31

*Franklin v. Adams & Assocs.*,
2018 U.S. Dist. LEXIS 139246 (E.D. Cal. Aug. 14, 2018) ................... 36

*Franklin v. City of S. Bend*,
153 Fed. Appx. 395 (7th Cir. 2005) ............................................... 23

*FTC v. Gill*,
265 F.3d 944 (9th Cir. 2001) ....................................................... 19

*Glanzman v. Uniroyal, Inc.*,
892 F.2d 58 (9th Cir. 1989) ........................................................ 22

*Goens v. Adams & Assocs.*,
817 Fed. Appx. 520 (9th Cir. 2020) ................................................. 39

*Greenwood v. FAA*,
28 F.3d 971 (9th Cir. 1994) ......................................................... 18

*Hollie v. Concentra Health Servs.*,
2012 U.S. Dist. LEXIS 40203 (N.D. Cal. Mar. 23, 2012) .................... 31

*Hope v. Cal. Youth Authority*,
134 Cal. App. 4th 577 (2005) ....................................................... 37

*Hornsby v. Alcoa, Inc.*,
715 Fed. Appx. 642 (9th Cir. 2017) ............................................... 28

*Hughes v. Pair*,
46 Cal.4th 1035 (2009) ......................................................... 38, 40

*In the Black Res., LLC v. Blitz Design, Inc.*,
2022 U.S. Dist. LEXIS 209147 (N.D. Cal. Nov. 17, 2022) .................. 41

*Isabel v. Reagan*,
2019 U.S. Dist. LEXIS 19784 (D. Ariz. Feb. 7, 2019) ........................ 21

*Jeremiah M. v. Crum*,
2022 U.S. Dist. LEXIS 209080 (D. Alaska Nov. 17, 2022) .................. 21

*Johnson v. Chevron Corp.*,
472 Fed. Appx. 428 (9th Cir. 2012) ............................................... 33

*Johnson v. Mammoth Recreations*,
975 F.2d 604 (9th Cir. 1992) ....................................................... 21

*Keiper v. Venta*,
670 Fed. Appx. 529 (9th Cir. 2016) ............................................... 19

*Killgore v. SpecPro Pro. Servs., LLC*,
51 F.4th 973 (9th Cir. 2022) ....................................................... 29

*Knowles-Browder v. Cal. Forensic Med. Grp. Staff*,
2007 U.S. Dist. LEXIS 6000 (E.D. Cal. Jan. 25, 2007) ....................... 21

*Lawler v. Montblanc N. Am. LLC*,
704 F.3d 1235 (9th Cir. 2013) ...................................................... 40

*Lawson v. PPG Architectural Finishes, Inc.*,
12 Cal.5th 703 (2022) .................................................................. 29

*Leong v. Potter*,
347 F.3d 1117 (9th Cir. 2003) ...................................................... 33

*Light v. Dep't of Parks & Recreation*,
14 Cal. App. 5th 75 (2017) ........................................................... 40

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005) ........................................................ 13

*Lyle v. Warner Bros. Television Prods.*,
38 Cal.4th 264 (2006) .................................................................. 38

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ........................................................ 26

*Maves v. First Horizon Home Loans*,
461 Fed. Appx. 636 (9th Cir. 2011) .............................................. 17

*Mazarei v. Sessions*,
734 Fed. Appx. 510 (9th Cir. 2018) .............................................. 17

*Metoyer v. Chassman*,
248 Fed. Appx. 832 (9th Cir. 2007) .............................................. 41

*Mewawalla v. Middleman*,
601 F. Supp. 3d 574 (N.D. Cal. May 2, 2022) ................................. 32

*Moreno v. UtiliQuest, Ltd. Liab. Co.*,
29 F.4th 567 (9th Cir. 2022) ........................................................ 28

*Mueller v. Cty. of L.A.*,
176 Cal. App. 4th 809 (2009) ....................................................... 30

*Muir v. City of Placentia*,
2020 U.S. Dist. LEXIS 139180 (C.D. Cal. Apr. 15, 2020) ................... 32

*Navajo Nation v. Norris*,
331 F.3d 1041 (9th Cir. 2003) ...................................................... 26

*Navellier v. Sletten*,
262 F.3d 923 (9th Cir. 2001) ................................................. 13, 19

*Pham v. Talkdesk, Inc.*,
2022 U.S. Dist. LEXIS 207473 (C.D. Cal. Nov. 14, 2022) ................. 29

*Pineda v. Abbott Labs., Inc.*,
2018 U.S. Dist. LEXIS 120146 (C.D. Cal. July 18, 2018).................... 39

*Prete v. Bradbury*,
438 F.3d 949 (9th Cir. 2006) ...................................................... 22

*Robertson v. Cty. of Alameda*,
2016 U.S. Dist. LEXIS 75487 (N.D. Cal. June 9, 2016) ...................... 35

*Rodriguez v. Lab'y Corp. of Am.*,
2022 U.S. Dist. LEXIS 184659 (C.D. Cal. Aug. 25, 2022) ................. 31

*Rosas v. NFI Indus.*,
2021 U.S. Dist. LEXIS 66781 (E.D. Cal. Apr. 6, 2021) ...................... 32

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ...................................................... 25

*Scianna v. Costco Wholesale Corp.*,
2019 U.S. Dist. LEXIS 152435 (N.D. Cal. Sep. 6, 2019) .................... 35

*Shalaby v. Mansdorf*,
703 Fed. Appx. 621 (9th Cir. 2017) ............................................. 16

*Sherard v. Safeco Ins. Co. of Am.*,
714 Fed. Appx. 802 (9th Cir. 2018) ............................................. 36

*Smith v. W.W. Grainger, Inc.*,
2019 U.S. Dist. LEXIS 67412 (C.D. Cal. Feb. 5, 2019) ...................... 33

*Soukup v. Law Offices of Herbert Hafif*,
39 Cal.4th 260 (2006) .............................................................. 28

*Trujillo v. N. County Transit Dist.*
   63 Cal. App. 4th 280 (1998) ...................................................... 5

*U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th
   Cir. 2011) .......................................................................... 28

*United States v. Jiminez*,
   498 F.3d 82 (1st Cir. 2007) ..................................................... 17

*Van Pelt v. Nev. ex rel. Nev. Dep't of Corr.*,
   637 Fed. Appx. 307 (9th Cir. 2016) ........................................... 36

*Vincent v. City of Cal. City*,
   2019 U.S. Dist. LEXIS 130750 (E.D. Cal. Aug. 2, 2019) .................... 30

*Walsh v. Nev. Dep't of Human Res.*,
   471 F.3d 1033 (9th Cir. 2006) .................................................. 37

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) .............................................. 25, 27

*Wilks v. Reyes*,
   5 F.3d 412 (9th Cir. 1993) ....................................................... 17

*Wyland v. Berry Petro. Co., Ltd. Liab. Co.*,
   2019 U.S. Dist. LEXIS 35300 (E.D. Cal. Mar. 5, 2019)...................... 39

*Yasin v. Coulter*,
   2009 U.S. Dist. LEXIS 81708 (E.D. Cal. Sep. 8, 2009) ...................... 21

*Yurick v. Superior Ct.*,
   209 Cal. App. 3d 1116 (1989) ................................................... 40

*Zivkovic v. S. Cal. Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002) ................................................... 19

**Statutes**

28 U.S.C. § 1291 .................................................................... 3

28 U.S.C. § 2111 ............................................................... 14, 22

Lab. Code § 1102.5(b) .............................................................. 29

Lab. Code § 1120.5 ……………………………………………………5, 32

**Rules**

Fed. R. App. P. 3(c)(1)(B) ……………………………………………… 16

Fed. R. App. P. 28(a) ……………………………………………… 16

Fed. R. App. P. 28(a)(6) ……………………………………………… 16

Fed. R. App. P. 28(a)(8)(A) ……………………………………………… 16

Fed. R. Civ. P. 16(b)(2) ……………………………………………… 19

Fed. R. Civ. P. 26(d)(1) ……………………………………………… 23

Fed. R. Civ. P. 61 ……………………………………………… 14

## I.     INTRODUCTION

This case arises from United Airlines, Inc.'s alleged demotion of Storm Cattoche.  Plaintiff-Appellant Cattoche appeals from the district court's August 26, 2022 order dismissing her Second Amended Complaint ("SAC") against United Airlines, Stephanie Lochmann MacLaren, and Andrew Willson.[1]  That order dismissed with prejudice Cattoche's retaliation and discrimination claims (asserted against United only), and dismissed her hostile work environment and intentional infliction of emotional distress claims (asserted against the Individual Defendants, as well as United), but provided her with an opportunity to try to replead them.  Cattoche then filed a Third Amended Complaint ("TAC") attempting to replead her claims for hostile work environment and intentional infliction of emotional distress ("IIED"), but she voluntarily dismissed this complaint with prejudice shortly after it was filed.

On this appeal from the order dismissing the SAC, Cattoche does *not* argue that the *Second Amended Complaint* included sufficient facts to state plausible claims, but instead devotes her brief almost exclusively to a discussion of her voluntarily dismissed *Third Amended Complaint* and saying that it somehow demonstrates that her lawsuit survives.  Indeed, nearly all of Cattoche's record

---

[1] MacLaren and Willson are collectively referred to as "Individual Defendants." United and the Individual Defendants are collectively referred to as "Appellees."

- 1 -

citations are to the TAC—not the SAC or the order dismissing it. Cattoche, moreover, does not engage in any substantive analysis of the claims at issue on this appeal—*i.e.*, the claims asserted in her SAC for discrimination under the Fair Employment and Housing Act ("FEHA") and retaliation in violation of Labor Code section 1102.5.[2] For instance, she does not refer to the statutory bases for her claims or cite case law describing the kinds of facts one must plead to state claims for violations of them. Nor does she point to allegations in the SAC and explain why those facts made out plausible claims for relief.

Cattoche's brief also takes aim at the timing of the district court's scheduling order, contending that its delayed issuance somehow impeded her efforts to obtain and present to the court discovery supporting her claims. But that argument misses the point—and, indeed, puts the cart before the horse. The task that faced the district court when adjudicating Appellees' motion to dismiss the SAC was to determine whether that complaint *alleged* sufficient facts to state a plausible claim for relief—Cattoche had no evidentiary burden as she would at the summary judgment stage. Discovery had nothing whatsoever to do with the motion to

---

[2] Cattoche's claims for hostile work environment (harassment) under the FEHA and IIED should play no part in this appeal because Cattoche voluntarily dismissed them with prejudice. But because the order on the SAC addressed these claims—dismissing them without prejudice with leave to replead, Appellees address the district court's order on those claims below. *See* § VII.C.3, *infra*.

dismiss inquiry (as it would at the summary judgment stage)—nor did Cattoche ever tell the district court that she needed discovery in order to plead her claims. Thus, the timing of the district court's scheduling order did not prejudice and could not have prejudiced Cattoche's efforts to state a claim for relief and thus avoid a Rule 12(b)(6) dismissal.

Finally, while, as noted, Cattoche does not meaningfully address—indeed, she does not address at all—the sufficiency of the allegations in her SAC, Appellees explain why the district court was correct to conclude that Cattoche's complaint does not pass muster. The court correctly concluded that the SAC contained only general and conclusory assertions of mistreatment rather than well-pled factual allegations sufficient to create any inference of a discriminatory or retaliatory motive. Cattoche fails to articulate any defect in the order dismissing the SAC and thus this Court should affirm it.

## II.    STATEMENT OF JURISDICTION

As Cattoche concedes in her opening brief and conceded throughout these proceedings, the district court had diversity jurisdiction over this action. AOB at 2, IV.A. Cattoche also states that this Court has jurisdiction pursuant to 28 U.S.C. § 1291 because after the district court's August 26, 2022 order dismissing several of her claims with prejudice, Cattoche voluntarily dismissed the remaining claims, rendering that August 26, 2022 order a final order. Appellees agree.

## III.  QUESTIONS PRESENTED

1.     Did Cattoche waive all arguments regarding the district court's ruling that the Second Amended Complaint did not sufficiently plead the claims asserted by failing to adequately brief those issues on appeal in accordance with Federal Rule of Appellate Procedure 28?

2.     Did the timing of the district court's scheduling order fall within the trial court's discretion and also not result in any unfair prejudice to Cattoche?

3.     Did the district court correctly conclude that Cattoche failed to allege sufficient facts in the SAC to state a plausible claim for relief?

## IV.  STATEMENT OF THE CASE

### A.    Cattoche's Initial And First Amended Complaint

Cattoche commenced this action against United on November 13, 2020. Before serving her complaint on Appellees, she filed her FAC, naming the Individual Defendants in addition to United and asserting claims for: (1) retaliation in violation of Labor Code section 1102.5; (2) gender discrimination; (3) race discrimination; (4) hostile work environment harassment[3]; and (5) IIED.  Cattoche

---

[3] In her complaints, Cattoche labelled the fourth cause of action "hostile work environment harassment and failure to prevent harassment." ER-016.  But hostile work environment and failure to prevent are distinct causes of action under the FEHA.  Moreover, the SAC contains no allegations that would support a failure to prevent claim and Cattoche did not address the cause of action in her opposition briefs in the district court or her opening brief here.  Thus, Cattoche cannot raise the issue on appeal.  *See* VII.A, VII.B, *infra*.  Finally, Appellees note that even if

asserted only the first (retaliation under Lab. Code § 1120.5) and fifth (IIED) causes of action against the Individual Defendants.

## B. The Court Schedules And Conducts The Initial Case Management Conference

On March 16, 2021, the district court set an initial case management conference. ER-097 (Dkt. No. 10). United moved to dismiss the first, second, and third causes of action in the FAC the following day. ER-097 (Dkt. No. 11). On June 17, 2021—while United's motion to dismiss was still pending—the parties filed a joint case management statement. In that statement, the parties jointly requested a discovery cutoff date of July 25, 2022 and a November 7, 2022 trial date. ER-097 (Dkt. No. 15).

The district court held the initial case management conference on June 24, 2021. ER-098 (Dkt. No. 17). At the conference, the court did not set a trial date or other deadlines. Instead, it referred the case to alternative dispute resolution and ordered the parties to file a joint status report by September 24, 2021. SER-03. The court stated that it would "issue a scheduling order … if warranted after reviewing the status report." SER-03.

---

Cattoche preserved the claim below and presented relevant arguments here, it would necessarily fail along with the underlying discrimination and harassment claims. *See, e.g.*, *Trujillo v. N. County Transit Dist.* 63 Cal. App. 4th 280, 289 (1998).

### C. The Court Denies A Joint Request For A Discovery Stay Pending Resolution of the Pleadings

On September 23, 2021, after an unsuccessful mediation, the parties submitted a joint status report. SER-04-06. In that report, the parties asked the district court for a "stay of all discovery and pending deadlines" in light of United's then-pending motion to dismiss and potential future motions. SER-05. Alternatively, if the court declined to grant a stay, the parties requested a January 31, 2023 fact discovery cutoff, a February 20, 2023 dispositive motion deadline, and a May 15, 2023 trial date. SER-06. The court denied the parties' request to stay discovery and did not set the requested deadlines. ER-098 (Dkt. No. 23).

### D. The Court Grants United's Motion To Dismiss The FAC But Grants Leave to Amend

On October 28, 2021, the district court granted United's motion to dismiss the FAC. The court found that Cattoche's vague, general, and conclusory allegations fell short of suggesting that she engaged in protected activity under section 1102.5 or that there was a discriminatory or retaliatory motive for her alleged demotion. Despite these defects, the district court gave Cattoche leave to amend her retaliation and discrimination claims. SER-09.[4]

---

[4] At the time of the district court's decision on United's motion to dismiss the FAC, Cattoche had not served the Individual Defendants. SER-09. United eventually agreed to accept service of the SAC on behalf of the Individual Defendants. ER-100 (Dkt. Nos. 29-30).

Cattoche then filed her SAC—the complaint at issue in this appeal—on November 12, 2021. ER-006-19. United and the Individual Defendants moved to dismiss the SAC on December 13, 2021 and January 24, 2022, respectively.[5] ER-099 (Dkt. Nos. 27, 35).

### E. The District Court Issues the Scheduling Order and Again Denies a Joint Request to Adjust Case Deadlines

On June 28, 2022—while Appellees' motions to dismiss the SAC was still pending—the district court issued a scheduling order setting various deadlines. Most notably, the district court set fact discovery cutoffs of August 19, 2022, a dispositive motion deadline of October 7, 2022, and a trial date of February 15, 2023. ER-067-68.

On July 12, 2022, the parties entered into a joint stipulation requesting an extension of all deadlines by 120 days. On July 15, 2022, the court, for a second time, rejected the parties' request to extend the deadlines in this case. In doing so, the district court stated "[m]otions to dismiss do not toll discovery" and the "scheduling order will not be revised." ER-099 (Dkt. No. 42).

---

[5] The SAC contains the same claims and parties as the FAC.

**F.    Summary Of The SAC, United's Motion To Dismiss The SAC, And The District Court's Dismissal Order**

**1.    Summary of the Second Amended Complaint**

**a.    Cattoche's Employment With United**

Cattoche is a flight attendant and former International Purser for United. ER-008, ¶ 9.  An International Purser is a flight attendant who "acts as [a] liaison between the 'flight deck', including pilots, captains, and first officers, and the flight attendants."  ER-008, ¶ 10.  Pursers receive an hourly wage premium above their standard flight attendant wages.  ER-008, ¶ 11.

**b.    Alleged Changes To The International Purser Job Duties**

Cattoche alleges that "[c]ommencing on January 11, 2020, changes began to occur at SFO which caused [her] and other Pursers and [f]light attendants concern."  ER-008, ¶ 13.  Thus, that same day, "Cattoche sent an[] email to SFO base management," including Kurt Wouters, John Slater, and the Individual Defendants "on behalf of a group of Pursers (female) who were raising concerns about material changes to the terms and conditions of the Pursers' employment."  ER-008, ¶ 15.  The SAC does not provide any details at all regarding the content of this alleged correspondence.

### c. Cattoche's Alleged Complaint To United And Refusal To Attend Meeting

Cattoche alleges that on an unspecified date in January 2020, she complained to United "management" that the "assignment of management duties [to Pursers] would run afoul of California law in the classification of exempt versus non-exempt employees under the Fair Labor Standards Act … or California law." ER-012, ¶ 44. Cattoche also alleges, based on "information and belief," that unspecified United managers "perceived [that] [she] [w]as about to report unlawful workplace practices to the California Labor Commissioner, the Department of Fair Employment and Housing, the California Division of Labor Standards Enforcement and/or the Equal Employment Opportunity Commission." ER-009, ¶ 17. Cattoche does not allege the basis for her belief in this regard—for instance, she does not say which managers perceived that she intended to report unlawful activity or what unlawful activity they believed she intended to report.

The SAC alleges that, on January 7, 2020 "Andrew Willson, SFO Base Director mandated a 'will attend' automatic reply on personal time without compensation." ER-009, ¶ 16. According to Cattoche, on January 13, 2020, she emailed unspecified managers stating that she was "refusing to attend the [Purser] meeting on personal time … without pay." ER-009, ¶ 19. Cattoche alleges that "each of the individual [sic] involved" in her eventual alleged demotion knew of

her "refusal to attend the off-the-clock meeting." ER-013, ¶ 47. But, once again, Cattoche's allegations area devoid of any detail—for instance, she does not even identify the manager involved in her alleged demotion who know about her refusal to attend the meeting—and she does not allege any factual basis for assertions about what those unspecified managers knew at the time of her alleged demotion.

### d. Cattoche's Alleged Demotion Following An Evaluation

On January 14, 2021, Cattoche received a performance evaluation from MacLaren. ER-009, ¶ 20. The SAC is unclear as to whether MacLaren performed the evaluation or simply provided Cattoche with a copy of it. In any case, that same day, United demoted Cattoche from the Purser position, a decision that it later ratified. ER-009, 011, ¶¶ 20, 32. As Cattoche describes the alleged demotion, United told her that the reason for her alleged demotion "related to a question regarding the service order in flight attendant duties." ER-009, ¶ 22. The SAC says nothing more than that—it does not specify what is meant by a "question regarding the service order in flight attendant duties" or what question Cattoche raised. Cattoche then goes on to allege in a conclusory fashion that "questions" similar to hers are "exceedingly common and do not result in discipline … [or] demotion." ER-009, ¶ 22. While Cattoche's SAC alleged that

United informed her of the reason for her alleged demotion, she objects that she did not receive it in writing. ER-009, 010-11, ¶¶ 21, 30-31.

On January 20, 2020, Cattoche emailed Kim Phillips, a United human resources manager, complaining of unspecified "unfair treatment." ER-010, ¶ 28.

### e. Alleged Post-Demotion Scrutiny

Cattoche alleges that after her demotion, unspecified individuals subjected her to "unprecedented scrutiny." ER-011, ¶ 33. This scrutiny included "stopping Ms. Cattoche from performing her duties, calling her in for non-random testing in front of her co-employees and customers, and engaging in hyper-scrutiny of her attire and performance." ER-011, ¶ 34. However, Cattoche does not allege that that this scrutiny led to any adverse employment action.

### f. Alleged Treatment of Purportedly Similarly Situated Employees

The SAC does not contain allegations suggesting that there is direct evidence of a discriminatory or retaliatory motive underlying United's alleged demotion of Cattoche. Instead, Cattoche alleges various instances of purported disparate treatment. Specifically:

- Cattoche names twelve allegedly "non-complaining" and "non-African American" Pursers who have had "in-flight incidents" similar to her own but who United did not remove from the Purser position. ER-014-16, ¶¶ 51, 68-71.

- Cattoche claims two allegedly similarly situated Pursers asked questions that were similar to her own. Cattoche alleges, based on

- 11 -

unspecified information and belief, that United did not discipline these two Pursers.  ER-009-10, ¶¶ 23-26.

Notably, Cattoche does not allege the facts needed to assess whether she was similarly situated to the identified comparators.

### 2. The District Court Grants The Motions To Dismiss The SAC, Cattoche Repleads The Claims Not Dismissed With Prejudice, And Then Voluntarily Dismisses That Amended Complaint With Prejudice

On July 15, 2022, the district court granted Appellees' motions to dismiss the SAC on grounds substantially similar to those stated in its prior order on the FAC, which dismissed the retaliation and discrimination claims without prejudice. ER-003-5.  The court found that Cattoche's complaint still consisted of "wholly conclusory" assertions (ER 004) and that "[a]lthough the amended complaint (SAC) adds some detail, it too does not allege 'enough facts to state a claim … that is plausible on its face."  ER-004, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  And because, as the district court explained, Cattoche had "multiple opportunities to plausibly allege the retaliation and discrimination claims" those claims were dismissed with prejudice.  ER-004.  As for the claims for harassment and IIED, the district court afforded Cattoche another the opportunity to try to plead her claims.  *Id.*  The court stated that any new complaint must be limited to those claims, but also suggested that Cattoche might be able to add "new claims or parties" so long as she first obtains court approval.  *Id.*

On September 8, 2022, Cattoche filed a Third Amended Complaint repleading her claims for harassment and IIED. ER-076. That same day, Cattoche moved for leave to correct the spelling of a named defendant and to substitute names for three DOE defendants. ER-100 (Dkt. No. 55). Before the district court had the opportunity to address the motion, Cattoche voluntarily dismissed the remainder of her action with prejudice. ER-089-90, 100 (Dkt. Nos. 56-57).

## V.    STANDARD OF REVIEW

A dismissal for failure to state a claim under Rule 12(b)(6) is reviewed *de novo*. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 737 (9th Cir. 2008). However, if this Court finds legal error in the district court's decision, it can still affirm the dismissal on any grounds supported by the record. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005) ("This court can affirm the district court's dismissal on any ground supported by the record, even if the district court did not rely on the ground.").

As Cattoche agrees, the district court's alleged delay in issuing the initial scheduling order is reviewed for abuse of discretion. AOB at III.2; *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (We review "challenges to trial court management for abuse of discretion."). Even if the district court abused its discretion in this regard, Cattoche is only entitled to appellate relief if she

demonstrates that the district court's delay had an adverse impact of her "substantial rights." Fed. R. Civ. P. 61; 28 U.S.C. § 2111.

## VI. SUMMARY OF ARGUMENT

Cattoche appeals the district court's order dismissing her SAC. Nothing she says in her appellate brief provides any basis to reverse that sound decision. To begin with, Cattoche's brief says next to nothing about the allegations in the SAC, nor does it offer any substantive argument attempting to show that he district court incorrectly concluded that those allegations did not survive a motion to dismiss. Instead, Cattoche attempts, in a perfunctory fashion, to defend the allegations in a different complaint that was not the subject of the order Cattoche appeals—namely, her TAC—and also argued that the timing of the district court's issuance of the scheduling order impeded her discovery efforts. Neither of those arguments come close to supporting reversal.

By failing to discuss the SAC, the district court's order dismissing it, and offering any legal basis why the SAC should be revived, Cattoche has waived any challenge to the dismissal of the SAC. This alone warrants summary affirmance.

Cattoche's arguments about the timing of the scheduling order does not help her either. District courts are afforded the discretion to manage the cases before them and there is no basis to conclude that the Court abused its discretion in its issuance of the scheduling order here. Nor can Cattoche demonstrate unfair

prejudice resulting from the timing of the district court's scheduling order. When faced with Appellees' motion to dismiss, Cattoche did not have an evidentiary burden. Instead, her task was to demonstrate—based on the allegations in the SAC and legal authority—that she had stated plausible claims for relief. That endeavor was unimpeded by anything the district court did or could have done in connection with scheduling or discovery. Nothing prevented Cattoche from conducting discovery starting in June 2021, and the fact she chose not do so until late in the case does not create reversible error. Moreover, while Cattoche now argues that she did not have enough time to conduct discovery, she affirmatively asked the district court to stay discovery pending resolution of all pleading challenges.

Given Cattoche's failure to address the allegations in the SAC or provide any legal grounds for resurrecting it, this Court need not delve into the sufficiency of those allegations. However, as Appellees show, Cattoche fell well short of stating any plausible claim for relief in the SAC.

The Court should affirm.

## VII. ARGUMENT

### A. By Not Presenting Any Arguments Directed To Showing That Her SAC Pleaded Plausible Claims For Relief, Cattoche Waived All Arguments And Issues That Are The Subject of This Appeal

This appeal arises from the district court's August 26, 2022 order on Appellees' motion to dismiss Cattoche's SAC, which dismissed some of Cattoche's

claims with prejudice and other claims without prejudice. *See* ER-092. Yet, Cattoche's appeal brief is devoid of any arguments relating to the factual allegations in her SAC; nor does it attempt to show that those allegations stated plausible claims for relief. That is reason enough to affirm the district court's dismissal of the SAC.[6]

Federal Rule of Appellate Procedure 28 sets for the required content of briefs. *See* Fed. R. App. P. 28(a). Among other things, an appellant's brief must state the "facts relevant to the issues submitted for review ... with appropriate references to the record"; and legal arguments supported by "citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(6), (8)(A). Failure to comply with Rule 28 with respect to an issue on appeal results in waiver of the issue. *Wilks v. Reyes*, 5 F.3d 412, 416-17 (9th Cir. 1993) (if an appellant fails to satisfy the requirements of Rule 28 "with respect to any issue raised, that issue will be deemed waived.").

---

[6] As noted, Cattoche's notice of appeal identifies only the district court's August 26, 2002 order granting the motion to dismiss the SAC as the matter for review. Thus, this Court should disregard Cattoche's musings on other topics, as such issues are not properly before this Court. Fed. R. App. P. 3(c)(1)(B) (the notice of appeal must "designate the judgment – or the appealable order – from which the appeal is taken."); *Shalaby v. Mansdorf*, 703 Fed. Appx. 621, 622 (9th Cir. 2017) (declining to "address the additional issues raised ... in his opening brief that were outside the scope of his Notice of Appeal").

Addressing an issue in a perfunctory fashion is insufficient to preserve an issue for appellate review. *Mazarei v. Sessions*, 734 Fed. Appx. 510, 511 (9th Cir. 2018) (appellant's "retroactivity argument is waived because, while mentioned in passing, it is 'not supported by argument.'"); *Maves v. First Horizon Home Loans*, 461 Fed. Appx. 636, 638 (9th Cir. 2011) (quoting *United States v. Jiminez*, 498 F.3d 82, 88 (1st Cir. 2007) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived")). Rather, the court will only address arguments that the appellant "clearly and specifically raised[.]" *Day v. Orrick, Herrington & Sutcliffe, LLP*, 2022 U.S. App. LEXIS 24319, *1-2 (9th Cir. Aug. 29, 2022). Here, Cattoche waived all of her arguments on appeal by failing to support them with citations to relevant excerpts of the record, developed argument, and supporting authority.

First and foremost, Cattoche's six-page statement of facts says nothing about the allegations in the SAC. Instead, she relies on and cites exclusively to allegations in the TAC, which she voluntarily dismissed with prejudice and which was not the subject of the district court order Cattoche appealed. Things get no better when it comes to the legal arguments contained in the brief. There, Cattoche again entirely ignores the SAC, referring to it only once for an entirely non-substantive purpose. What really drives home Cattoche's failure to defend the complaint at issue on appeal is the lead heading in the "Argument" section of her

brief (apart from the standard of review), which frames her legal argument as follows: "THE **THIRD AMENDED COMPLAINT** STATED FACTS SUPPORTING PLAUSIBLE CLAIMS FOR RELIEF." AOB, Table of Contents & 10 (emphasis added).

Nor does Cattoche substantively address the legal sufficiency of her claims. She does not cite or discuss a single case addressing the legal standards governing the causes of action she claims the district court erroneously dismissed. Indeed, the only cases cited in the brief are those generally addressing the standard for addressing a Rule 12(b)(6) motion. Notably absent is even a single reference to section 1102.5, the FEHA, or IIED. And the term "harassment" appears only in passing in the introduction and conclusion of the brief.

Cattoche's appeal, therefore fails to present arguments on which this Court can rule, because her brief is devoid of any substantive argument addressing the claims the district court dismissed and that are the subject of this Court's review. It is not this Court's job to "manufacture arguments for [] appellant[.]" *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). Affirmance, therefore, is required.

## B. The Timing Of The District Court's Scheduling Order Did Not Constitute Reversible Error

Under Federal Rule of Civil Procedure 16, a district court must normally issue a scheduling order "within the earlier of 90 days after any defendant has been

served with the complaint or 60 days after any defendant has appeared." Fed. R. Civ. P. 16(b)(2). Cattoche contends that the district court abused its discretion by failing to issue the initial scheduling order within this time period. Cattoche is wrong—there was no abuse of discretion. And, in any event, Cattoche does not show that she was prejudiced by the timing of the scheduling order.

### 1.    The District Court Did Not Violate Rule 16

The district court is not bound to the Rule 16(b)(2) deadline if it finds that there is "good cause for the delay[.]" *Id.* In assessing whether there was good cause, it is appropriate to defer to the district court, which has "broad discretion in supervising the pretrial phase of litigation[.]" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). This discretion gives courts wide latitude in establishing deadlines and managing their dockets. *FTC v. Gill*, 265 F.3d 944, 957 (9th Cir. 2001); *Keiper v. Venta*, 670 Fed. Appx. 529, 530 (9th Cir. 2016). Accordingly, appellate courts rarely interfere with a judge's case management decisions. *See Navellier*, 262 F.3d at 941. Here, the district court had good cause for delay in issuing the scheduling order.

The district court here ordered the parties to provide a proposed schedule in their initial joint CMC statement because the court intended to enter a scheduling order after the conference. However, when, at the CMC conference, the parties agreed to participate in the court's ADR program, the court stated that it would

"issue a scheduling order and order re: the motion to dismiss [] if warranted after reviewing the status report" to be submitted after ADR efforts.  SER-03.

In light of the then-pending motion to dismiss, the parties' pursuit of potential settlement via ADR, and the outstanding service issues,[7] there was good cause for the district court to exercise its discretion to postpone the issuance of the scheduling order.  *See, e.g.*, *Alpha Kappa Alpha Sorority, Inc. v. Converse Inc.*, 175 Fed. Appx. 672, 682 (5th Cir. 2006) ("The district court cannot be said to have abused its discretion in delaying the issuance of a scheduling order until its ruling on the Rule 12(b)(6) motion.").  Indeed, district courts routinely exercise their discretion in this way when there are service issues, pending motions, or other substantive issues to be resolved that are critical to the future of the litigation. *See, e.g.*, *Biro v. Keyes*, 2022 U.S. Dist. LEXIS 130692, *5-7 (C.D. Cal. July 20, 2022) (finding that there is good cause "to postpone the issuance of a Scheduling Order" due to outstanding service issues and potential motions under Rule 12(b)); *Yasin v. Coulter*, 2009 U.S. Dist. LEXIS 81708, *1-2 n.1 (E.D. Cal. Sep. 8, 2009) ("The FAC, filed May 27, 2009, [] names … [additional] defendants. To date, plaintiff has not served these defendants … The court … will defer [issuing a scheduling order] … to permit plaintiff a final opportunity to serve the []

---

[7] At the time of the CMC, Cattoche still had not served the Individual Defendants.

defendants"); *Knowles-Browder v. Cal. Forensic Med. Grp. Staff*, 2007 U.S. Dist. LEXIS 6000, *3 (E.D. Cal. Jan. 25, 2007) ("The court has deferred issuing a scheduling order pending disposition of defendants' motion for summary judgment."); *Isabel v. Reagan*, 2019 U.S. Dist. LEXIS 19784, *2-4 (D. Ariz. Feb. 7, 2019) ("the existence of these pending motions constitutes good cause to delay the issuance of the scheduling order and the Rule 26(f) process."); *Jeremiah M. v. Crum*, 2022 U.S. Dist. LEXIS 209080, *9 (D. Alaska Nov. 17, 2022) ("there is good cause for delay in issuing a scheduling order under Rule 16(b)(2) … because … Defendants' Motion to Dismiss has the potential to significantly change the scope of this litigation[.]").

Moreover, even in the absence of good cause, a failure to timely issue a scheduling order is not a basis for reversing an order granting a motion to dismiss. Indeed, the Advisory Committee Note to Rule 16 recognizes that courts often will miss the scheduling order deadline and "explains what steps should be followed if that deadline is missed." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 n.5 (9th Cir. 1992). However, neither the text of Rule 16 nor the advisory committee notes suggest that delayed issuance of a scheduling order should invalidate it or be accompanied by any other consequence—especially not the one Cattoche advocates for here, namely, the resuscitation of a complaint that does not

clear the Rule 12(b)(6) bar. *See id.* ("Nowhere is it implied that a late-filed [scheduling] order is invalid.")

### 2. Even If The District Court Abused Its Discretion In Its Issuance Of The Scheduling Order It Was A Harmless Error Because It Did Not Prejudice Cattoche

Even if the district court abused its discretion in issuing the scheduling order—which it did not—that would amount to a harmless error, not a basis for reversing an unrelated decision on the merits. Appellate courts do not consider "errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111; *Glanzman v. Uniroyal, Inc.*, 892 F.2d 58, 61 (9th Cir. 1989) ("If an error does 'not affect the substantial rights of the parties' it will be deemed 'harmless' and not grounds for reversal or appeal."); *Prete v. Bradbury*, 438 F.3d 949, 959-60 (9th Cir. 2006) ("Under 28 U.S.C. § 2111 and Federal Rule of Civil Procedure 61" appellate courts "may not reverse the district court's judgment" based on an error "unless [it] … affected the 'substantial rights of the parties.'").

Courts that have addressed the import of a court's failure to issue a timely scheduling order have found that it constitutes harmless error and does not support appellate relief. *See, e.g.*, *Corey Lea Inc. v. United States DA*, 2013 U.S. App. LEXIS 26305, *10-11 (6th Cir. Aug. 7, 2013) ("Lea fails to allege any prejudice from the district court's failure to comply with [] Rule [16(b)(2)]. Thus, any error is harmless."); *Franklin v. City of S. Bend*, 153 Fed. Appx. 395, 397 (7th Cir.

2005) (appellant "argues that his due process rights were violated when the district court failed to timely issue a scheduling order, in violation of Fed. R. Civ. P. 16(b). ... Although such delays cannot be condoned, ... the court's delay was harmless").

Cattoche suggests that the district court's delayed issuance of the scheduling order was prejudicial because it resulted in "a period of fact discovery of 52 days." (AOB Br. 1-2). But that is false. Cattoche was free to commence discovery once the parties held their Rule 26(f) conference, which occurred in June 2021. ER-097 (Dkt. No. 15); *see also* Fed. R. Civ. P. 26(d)(1). Discovery did not close until August 2022—and so Cattoche was free to conduct discovery for more than a year. Simply put, there was not a 52-day discovery period—there was a 421-day discovery period. Nothing prevented Cattoche from conducting discovery starting in June 2021, and the fact she Cattoche chose not do so until late in the case does not create reversible error.[8]

---

[8] The dates in the scheduling order should not have come as a surprise to Cattoche. The district judge's standing order makes clear that "counsel should budget no more than 18 months between the initial case management conference and trial." That is precisely the amount time between the initial case management conference and the trial date that was set in this case. Cattoche therefore cannot claim that the discovery deadline (which closed just two months before the date set for trial) came as a surprise. Standing Order for Civil Cases Before Judge James Donato (N.D. Cal. Jan 5, 2017).

- 23 -

That aside, Cattoche's own conduct in this case demonstrates that she has no grounds to claim reversible error based on the timing of the scheduling order. While Cattoche now argues that she did not have enough time to conduct discovery, she *expressly requested* that the district court *stay discovery* pending resolution of all pleading challenges. As the parties' stated in their September 23, 2021 joint status report:

> [A] stay of all discovery and pending deadlines is appropriate given: (1) the Court's need to consider and rule on United's pending motion to dismiss which may take some time given the Court's heavy docket, and (2) the anticipated further motion practice, even if United's pending Motion to Dismiss is heard and ruled upon by the Court in United's favor. This includes, but is not limited to, additional dispositive motions by United (should the Court give Plaintiff leave to amend), as well as by individual defendants MacLaren and Willson. As such, the Parties propose that all deadlines and discovery remain stayed until after the pleadings have been finalized in this matter.

SER-05. Given that Cattoche requested that the district court enter an order that would have *precluded* her from engaging in any discovery, she cannot now complain that 421 days (or even 52 days) was insufficient.

In short, Cattoche's decision not to conduct discovery while Appellees' motions to dismiss were pending and her affirmative statement that she wanted discovery delayed while the motions were pending forecloses her belated claims of prejudice on appeal and shows why she cannot demonstrate prejudice and reversible error as to the August 26, 2022 order dismissing the SAC.

Moreover, the issue before the district court on the dismissal motion—and now before this Court on appeal—is whether the SAC pleaded sufficient facts to state a plausible claim for relief. Cattoche had no evidentiary burden—instead, she just needed to plead sufficient facts. If Cattoche believed she needed discovery in order to find facts to make her claim plausible, she could have done that discovery (which she was permitted to do beginning in June 2021)—not urge that discovery be delayed pending resolution of the motions to dismiss. She, however, did not. Nor did she ever suggest to the district court that she needed discovery in order to plead plausible claims for relief.

Cattoche's implicit suggestion that she had a right to conduct discovery for some rather lengthy period prior to being put to the test of whether she had stated a viable claim is unfounded. As this Court has explained, plaintiffs cannot "rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("the Supreme Court has been clear that discovery cannot cure a facially insufficient pleading"); *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (""The purpose of … 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."). Thus, irrespective of the impact the district court's scheduling order had on Cattoche's discovery plans,

- 25 -

it did not negatively impact her substantive right, which in this instance was simply to have the district court fairly assess the claims alleged in the SAC.

Finally, Appellees note that nothing precluded Cattoche from "appris[ing] the Court of the results of [] discovery," and seeking relief based on those "results." *See* AOB 8. Cattoche had 14 months to conduct discovery and provide the court with information she believed would support her claims. For instance, if Cattoche wished to amend her complaint to make allegations based on information learned in discovery, she could have filed a Rule 15 motion (before the dismissal order was entered) or sought reconsideration or relief from the order under Rules 59 and/or 60 (after the dismissal order was entered)—but she never did so. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (party can file a motion for reconsideration based on the presentation of newly-discovered evidence); *Barton v. Del Toro*, 2023 U.S. Dist. LEXIS 12341, at *6-7 (S.D. Cal. Jan. 24, 2023) (granting motion to reconsider order dismissing Title VII claim with prejudice); *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (court can reconsider an order "in the face of the existence of new evidence").

**C.      The District Court Properly Dismissed Cattoche's SAC Because It Does Not State A Plausible Claim For Relief**

This appeal is from an order dismissing the SAC.  Thus, to prevail here, Cattoche must show that the SAC alleged sufficient facts to state a plausible claim for relief.  However, as shown above, Cattoche makes no attempt to explain why her claims survive Rule 12(b)(6) scrutiny, which alone is fatal to her appeal.  *See* VII.C.1, *supra*.  In any event, as discussed below, the district court's decision to dismiss the SAC was correct.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings.  *Whitaker*, 985 F.3d at 1175.  To survive such a motion, "a complaint must contain sufficient factual matter" that, if accepted as true, "'state[s] a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In assessing whether a plaintiff meets this standard, courts disregard legal conclusions, even those couched as factual allegations.  *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Such conclusions are not entitled to an assumption of truth. *Ashcroft*, 556 U.S. at 681; *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  Similarly, courts do not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

After disregarding those assertions that are conclusory or otherwise not entitled to a presumption of truth, the court considers what well-pled factual allegations remain to determine "whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679; *U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). Where the non-conclusory factual allegations are "merely consistent with a defendant's liability", the complaint is subject to dismissal. *Ashcroft*, 556 U.S. at 678; *see also Hornsby v. Alcoa, Inc.*, 715 Fed. Appx. 642, 643 (9th Cir. 2017).

### 1. The SAC Does Not Contain Sufficient Factual Allegations to State a Section 1102.5 Retaliation Claim

To state a *prima facie* case for violation of section 1102.5, a plaintiff must show (1) that she engaged in protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Moreno v. UtiliQuest, Ltd. Liab. Co.*, 29 F.4th 567, 575 (9th Cir. 2022); *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 287-88 (2006). After affording Cattoche the opportunity to amend after finding that her FAC did not state a plausible retaliation claim, the district court dismissed Cattoche's section 1102.5 claim with prejudice because her "general and rather vague allegations" did not show that she engaged in protected

activity, or that she suffered an adverse action as a result of the alleged protected activity.  ER-004.  The district court's decision was correct.

To engage in protected activity under section 1102.5, an employee must disclose information that she reasonably and in good faith believes shows a violation of a federal or state law, and she must make the disclosure "to a person with authority" over her or to an employee with the "authority to investigate, discover, or correct the violation or noncompliance."  Lab. Code § 1102.5(b); *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal.5th 703, 709 (2022). Moreover, plaintiffs must generally set forth the specific rule, regulation or statute they believed had been violated, and the factual basis for that belief.  *Pham v. Talkdesk, Inc.*, 2022 U.S. Dist. LEXIS 207473, *12-13 (C.D. Cal. Nov. 14, 2022) (citing *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 991 (9th Cir. 2022) ("the plaintiff must identify both the specific activity and the specific statute, rule or regulation at issue").

Cattoche contends that she engaged in protected activity by: (a) communicating to unspecified United managers that "assignment of management duties [to Pursers] would run afoul of [the FLSA and] California law in the classification of exempt versus non-exempt employees" (ER 012, ¶ 44); and (b) sending an email to unspecified United managers refusing to attend a Purser

meeting on personal time (ER 009, ¶ 19). Neither of these constitute protected activity.[9]

As a matter of law, Cattoche's first complaint has no connection to unlawful activity. Neither the FLSA nor California law prohibit assigning "management" duties to an employee, whether exempt or non-exempt. Moreover, the SAC contains no factual allegations suggesting that Cattoche had a reasonable and good faith basis for believing the contrary.[10] Rather than engaging in protected activity, Cattoche was merely voicing an objection to potential new job duties. *See, e.g.*, *Mueller v. Cty. of L.A.*, 176 Cal. App. 4th 809, 822 (2009) (complaints about personnel matters do not constitute protected activity under section 1102.5); *Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 934 (2007)

---

[9] Cattoche alleges that she sent emails to managers "raising concerns about material changes to the terms and conditions of Purser's employment" (ER-008 ¶ 15); and to complain about "unfair treatment" (ER 010 ¶ 28). However, Cattoche does not state that these communications constitute protected activity. That is not surprising as they concern general workplace issues rather than reports of unlawful conduct. *See, e.g.*, *Vincent v. City of Cal. City*, 2019 U.S. Dist. LEXIS 130750, *26 (E.D. Cal. Aug. 2, 2019) ("general complaints [] about the work environment" do not constitute protected activity).

[10] To underscore the point, Cattoche repeatedly alleges that United's conduct may violate Wage Order No. 4. ER-009, 013, ¶¶ 19, 45. But Wage Order No. 4 did not even apply to Cattoche. Rather, she was subject to Wage Order No. 9, which governs the transportation industry and exempts CBA-covered employees like Cattoche, from most California wage and hour rules. *See* Wage Order No. 9, § 1(E); SER-07-09.

("a routine internal personnel disclosure," that at its core amounts to a "disagreement" is not the type of disclosure encompassed by Labor Code section 1102.5); *Rodriguez v. Lab'y Corp. of Am.*, 2022 U.S. Dist. LEXIS 184659, *14 (C.D. Cal. Aug. 25, 2022) ("California courts have made clear that discussions regarding personnel matters do not qualify for protection under section 1102.5.").

Similarly, refusing to attend the Purser meeting without pay does not involve a disclosure of illegality and thus section 1102.5(b) does not protect it. Cattoche may want to characterize her refusal to attend the Purser meeting as a refusal to "participate in an activity that would result in a violation" of law, which section 1102.5(c) protects. But the case law repudiates that theory of protected activity. "While it is true that it is unlawful under California's labor laws for an employer to refuse to pay hourly non-exempt employees for time they have worked, *an employee who works without pay is not 'participat*[ing] *in'* or engaging in, a criminal act[.] *Hollie v. Concentra Health Servs.*, 2012 U.S. Dist. LEXIS 40203, *14 (N.D. Cal. Mar. 23, 2012) (finding "as a matter of law that plaintiff cannot establish that he engaged in an act protected under § 1102.5(c).") (emphasis added). Additionally, "to be protected under [1102.5(c)], 'the employer must be on notice that the employee's reason for refusing to participate … is that the conduct violates a state or federal [law]." *Ferretti v. Pfizer Inc.*, 2013 U.S. Dist. LEXIS 4730, *27-28 (N.D. Cal. Jan. 10, 2013). Cattoche does not allege

- 31 -

that the unknown manager had knowledge that she refused to attend the Purser meeting based on concerns of illegality.

Finally, even if Cattoche did engage in protected activity, the dismissal of the SAC still would have been correct. She does not allege any facts that give rise to an inference of a retaliatory motive. Indeed, even Cattoche's allegations regarding United's knowledge of her alleged protected activities are conclusory and proffered without any supporting factual predicate. *See* ER-014, ¶ 54; *Muir v. City of Placentia*, 2020 U.S. Dist. LEXIS 139180, *11 (C.D. Cal. Apr. 15, 2020) (dismissing section 1102.5 claim because plaintiff failed "to sufficiently plead that those responsible for making the decision to discharge him knew he had engaged in protected [activity]").[11]

---

[11] While the district court did not address this issue, it is worth noting there is another reason why Cattoche's section 1102.5 claims against the Individual Defendants failed. Section 1102.5 prohibits retaliation by "[a]n employer, or any person acting on behalf of an employer[.]" Lab. Code § 1102.5. While neither the Ninth Circuit nor California appellate courts have opined on the issue, section 1102.5 "has consistently been construed by district courts in the Ninth Circuit to preclude individual liability by a manager or other non-employer." *Dias v. Burberry Ltd.*, 2021 U.S. Dist. LEXIS 108200, *11-12 (S.D. Cal. June 9, 2021); *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 609 (N.D. Cal. May 2, 2022) (courts that have addressed individual liability under section 1102.5 "in the context of a 12(b)(6) motion have held that section 1102.5 liability does not apply to individual supervisors"). "[F]ederal courts … have granted motions to dismiss § 1102.5 claims brought against individual defendants … largely on the ground that the California Supreme Court has interpreted similar statutory language to preclude individual liability." *Rosas v. NFI Indus.*, 2021 U.S. Dist. LEXIS

### 2. Dismissal of Cattoche's Gender and Race Discrimination Claims Was Proper Because They are Unsupported Non-Conclusory Factual Allegations

To state a *prima facie* case of discrimination under the FEHA, a plaintiff must show (1) that she belonged to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class received more favorable treatment. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003); *Johnson v. Chevron Corp.*, 472 Fed. Appx. 428, 429 (9th Cir. 2012). The SAC contains no well-pled allegations suggesting a discriminatory motive.

Cattoche does not allege—not even in a conclusory fashion—that any individual(s) demoted her based on her race or gender or harbored discriminatory animus on that basis. Rather, to try to suggest a discriminatory motive, Cattoche relies on comparator allegations. But these allegations are insufficient.

With respect to Cattoche's gender discrimination claim, the allegations are sparse and general, consisting of nothing more than the bare assertion that she was "treated less favorably than her non-female counterparts." ER-014 ¶ 59, ER-015 ¶ 62. Such allegations are well short of what is required to state a plausible claim. *Smith v. W.W. Grainger, Inc.*, 2019 U.S. Dist. LEXIS 67412, *9 (C.D. Cal. Feb.

66781, *12-14 (E.D. Cal. Apr. 6, 2021) (concluding that "section 1102.5 does not impose individual liability on supervisors.").

- 33 -

5, 2019) (allegation that "younger white men with less experience and who were less qualified received promotions" was insufficient to create inference of discrimination).

The comparator allegations Cattoche proffers to support her discrimination claim are, at least at first blush, somewhat more robust than those concerning gender. Specifically, Cattoche names 14 non-black individuals who she alleges engaged in conduct similar to her own but who United did not allegedly demote. ER-009-010, 013, 015-16, ¶¶ 23-26, 51, 68-71. Importantly, however, Cattoche provides only a vague and generally confusing description of her own conduct that putatively resulted in her alleged demotion. ER-009 ¶ 22 ("The grounds for demotion were purportedly related to a question regarding the service order in flight attendant duties.")). This creates numerous insurmountable hurdles standing in the way of Cattoche's efforts to rely on comparator evidence to survive a motion to dismiss.

For a comparator to support a discrimination claim, he or she must be, at a minimum, "similarly situated to the plaintiff "*in all relevant respects*." *Eshun v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 2020 U.S. Dist. LEXIS 234671, *48-49 (E.D. Cal. Dec. 14, 2020) (emphasis added). But without a coherent and more detailed description of Cattoche's conduct in the SAC, assessing the degree of similarity between her and

- 34 -

her non-black counterparts is not possible. *See Robertson v. Cty. of Alameda*, 2016 U.S. Dist. LEXIS 75487, *8-9 (N.D. Cal. June 9, 2016) (Without knowing the comparator's and the plaintiff's conduct, "it is not possible to determine whether [the comparator] was 'similarly situated' to Plaintiff "). That is fatal in cases such as this one, where comparator allegations are the only predicate for an inference of discriminatory motive.

Cattoche's insufficient description of her own misconduct and that of the proffered comparators is merely the start of the problem. She also fails to allege relevant information regarding herself and the comparators that is central to the similarly situated analysis. For example, Cattoche does not allege facts indicating whether she and the comparators have the same supervisor, same disciplinary history, same tenure, or other similarities that are relevant to the similarly situated analysis. *See Scianna v. Costco Wholesale Corp.*, 2019 U.S. Dist. LEXIS 152435, *18-19 (N.D. Cal. Sep. 6, 2019) ("Plaintiffs have not provided evidence that these other individuals had the same supervisor, same standards, or similar misconduct with no mitigating or distinguishing characteristics. [Citation]. The descriptions presented are vague, brief, and do not show sufficient similarities between the incidents."). By omitting information regarding her own conduct (*e.g.*, its severity, regularity, etc.) and relevant facts related to the proffered comparators, Cattoche has rendered it impossible to assess "whether and how [] differences in

treatment among other employees relate[] to her claims." *Franklin v. Adams & Assocs.*, 2018 U.S. Dist. LEXIS 139246, *9 (E.D. Cal. Aug. 14, 2018).

### 3. The Court Does Not Need to Address Cattoche's Harassment and IIED Claims

While Cattoche brought claims for harassment and IIED in the SAC, they are not properly before this Court for two independent reasons.

First, after the district court dismissed the SAC, Cattoche attempted to re-plead her harassment and IIED claims. Rather than litigating the claims, Cattoche promptly and voluntarily dismissed them with prejudice. By doing so, Cattoche waived the right to raise her harassment and IIED claims on appeal. *See Van Pelt v. Nev. ex rel. Nev. Dep't of Corr.*, 637 Fed. Appx. 307, 308 (9th Cir. 2016) (claim was not properly before the appellate court for review because plaintiff dismissed it with prejudice in the district court); *Sherard v. Safeco Ins. Co. of Am.*, 714 Fed. Appx. 802, 803 (9th Cir. 2018) ("Plaintiffs' remaining claims were voluntarily dismissed with prejudice. We do not address plaintiffs' arguments to the extent they are based upon these claims.").

Second, in its motion to dismiss the SAC, United argued that Cattoche failed to allege sufficient facts to support her harassment and IIED claims. ER-020-42. As United pointed out in its reply brief, Cattoche made no attempt to defend these claims in her opposition to the motion to dismiss. ER-043-52, 057-58. That is

fatal to any effort to defend those claims here. A "plaintiff who makes a claim … in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss … has effectively abandoned his claim, and cannot raise it on appeal." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).

Even though Cattoche's abandonment of her harassment and IIED claims makes it unnecessary for this Court to address them, Appellees note that as set forth below, their dismissal was appropriate.

### a.    Cattoche Failed to Allege Sufficient Facts to State a Gender-Based Harassment Claim

To state a *prima facie* claim of gender-based harassment under the FEHA, Plaintiff must allege that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected class; and (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment. *Aguilar v. Avis Rent A Car Sys., Inc.* 21 Cal.4th 121, 131 (1999). To satisfy this standard, the plaintiff must show that she was subject to gender-based harassment that "would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee." *Hope v. Cal. Youth Authority*, 134 Cal. App. 4th 577, 588

(2005). The alleged harassment must be sufficiently severe or pervasive so as to alter the terms and conditions of employment. *Lyle v. Warner Bros. Television Prods.*, 38 Cal.4th 264, 279 (2006); *Aguilar*, 21 Cal.4th at 131. Actionable harassment "cannot be occasional, isolated, sporadic, or trivial." *Aguilar*, 21 Cal.4th at 131. Rather, a plaintiff must show a "concerted pattern of harassment or a repeated, routine, or a generalized nature." *Id.*; *see also Hughes v. Pair*, 46 Cal.4th 1035, 1043 (2009).

Cattoche does not allege that she was subject to gender-based remarks, inappropriate touching, or similar conduct that typically forms the predicate of a well-pled harassment claim. Rather, the allegations in the SAC are either conclusory, and thus properly disregarded; or concern various personnel actions that do not constitute harassment as a matter of law.

Specifically, Cattoche generally alleges that: (a) United "maintain[s] a hostile work environment" (ER 017 ¶ 80); (b) United has a "pattern and practice of not investigating or taking remedial action" in response to workplace harassment (ER-011 ¶ 36, ER-012 ¶ 39); (c) she "has been subjected to pervasively hostile treatment in her workplace" (ER-016 ¶ 78); and (d) her work has recently become subject to heightened scrutiny (ER-011 ¶ 34, ER-013 ¶ 52, ER-017 ¶ 79). But Cattoche does not provide the necessary detail to flesh out these conclusory

assertions.[12] *See, e.g.*, *Wyland v. Berry Petro. Co., Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 35300, *15-17 (E.D. Cal. Mar. 5, 2019) (plaintiff's allegations that she was harassed by "managers of Defendants"; "that the harassment was severe or pervasive"; and "that the defendant should have been aware of the harassment" were "conclusory in nature" and thus not entitled to a presumption of truth).

Cattoche's other allegations concern various personnel decisions, such as an alleged demotion, selection for a drug test, receipt of a negative performance evaluation, workplace scrutiny, and the like. ER-009, 011, ¶¶ 20, 34. But these actions do not constitute severe or pervasive harassment and cannot be the predicate for Cattoche's claim. *Goens v. Adams & Assocs.,* 817 Fed. Appx. 520, 522 (9th Cir. 2020) (concluding that district court properly dismissed harassment claim because allegations concerned personnel actions such as hiring and firing); *Pineda v. Abbott Labs., Inc.*, 2018 U.S. Dist. LEXIS 120146, *9 (C.D. Cal. July 18, 2018) (personnel actions "such as hiring and firing, job or project assignments, promotions or demotions, and performance evaluations do not constitute a

---

[12] For example, Cattoche does not identify particular event(s), or the individuals responsible for the events, that created the allegedly "hostile work environment." *See, e.g.*, *Abdul-Haqq v. Kaiser Emergency in San Leandro*, 2017 U.S. Dist. LEXIS 19520, *3 (N.D. Cal. Feb. 10, 2017) (emphasizing that "[t]he complaint is generally vague, conclusory, unclear and devoid of specific names, incidents, dates, and events.").

harassment claim under FEHA") (citing *Lawler v. Montblanc N. Am. LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013)).

**b.  The District Court Properly Dismissed Cattoche's IIED Claim**

The requirements for stating an IIED claim are "rigorous, and difficult to satisfy." *Yurick v. Superior Ct.*, 209 Cal. App. 3d 1116, 1129 (1989).  A plaintiff must prove "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017); *see also Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012). For conduct to be "extreme and outrageous," it must be so "exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal.4th at 1050-51. Cattoche failed to allege sufficient facts regarding any of the elements of an IIED claim.

Cattoche predicates her IIED claims on various personnel actions, such as her alleged demotion, selection for a drug test, receipt of a negative performance evaluation, performance scrutiny, and the like.  ER-009, 011, 013 ¶¶ 20 33-34, 52.  But as with her FEHA harassment claims, personnel actions, even unlawfully

motivated ones, are insufficient to state an IIED claim. *See e.g.*, *Metoyer v. Chassman*, 248 Fed. Appx. 832, 835 (9th Cir. 2007) ("Under California law, '[a] simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, *even if improper motivation is alleged*.'") (citations omitted; emphasis in original). The SAC is devoid of any allegations—even of the trivial sort—that one could reasonably construe as forming the predicate for the IIED claim. *See generally Anneny v. Lockheed Missiles and Space Co.*, 88 Cal. App. 3d 531, 537 (1979) ("[I]nsults, indignities, threats, annoyances, petty oppression, or other trivialities" are insufficient to state an IIED claim.").

An IIED plaintiff also must allege facts showing she suffers from extreme emotional distress. *See In the Black Res., LLC v. Blitz Design, Inc.*, 2022 U.S. Dist. LEXIS 209147, *16 (N.D. Cal. Nov. 17, 2022). Here, Cattoche repeatedly alleges that she suffered from "severe emotional distress" (ER 014 ¶¶ 55, 15 ¶ 64, 19 ¶ 86-87), but provides no details to bolster this assertion. In effect, Cattoche merely recites this IIED element, which is insufficient to state a claim. *See, e.g.*, *Burnell v. Marin Humane Soc'y*, 2015 U.S. Dist. LEXIS 150607, *65 (N.D. Cal. Nov. 5, 2015) (dismissing IIED claim because plaintiff did not allege sufficient facts "pertaining to the nature and extent of Plaintiffs' emotional or mental suffering").

- 41 -

Finally, to state an IIED claim the plaintiff must also allege that the defendant "acted with intent to create or reckless disregard of the probability of causing emotional distress." *Benton v. Baker Hughes*, 623 Fed. Appx. 888, 889 (9th Cir. 2015). Cattoche's allegations on this element are deficient in at least two respects. First, with rare exception, Cattoche's allegations as to intent relate to "Defendants" generally. ER-014 ¶ 55, 017 ¶ 83, 018 ¶ 92. "Courts in this circuit have held that a complaint fails to state a claim and must be dismissed if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act." *Consumerdirect, Inc. v. Pentius, LLC*, 2022 U.S. Dist. LEXIS 91984, *15 (C.D. Cal. Apr. 4, 2022). Second, even where the SAC specifies the defendant(s) who allegedly intended to cause her distress, the underlying allegation is non-specific, conclusory, and falls short of the *Iqbal* and *Twombly* standard. ER-018 ¶ 86 ("McLERANAND and ... WILLSON engaged in the conduct set forth above in order to cause Plaintiff severe emotional distress, with intent to cause distress"); ER-014 ¶ 56 ("Cattoche suffered severe emotional distress based on the "intentional retaliation by Defendant[.]").

Thus, Cattoche's IIED claim fails.

## VIII. CONCLUSION

For the reasons set forth above, this Court should summarily affirm the district court's order granting United's motion to dismiss.

Dated: February 16, 2023

Respectfully submitted,

*/s/ Kim M. Watterson*
Kim M. Watterson
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
kwatterson@reedsmith.com

Michele Haydel Gehrke
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105
mgehrke@reedsmith.com

Brian K. Morris
REED SMITH LLP
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
bmorris@reedsmith.com

*Counsel for Defendants-Appellees*

## STATEMENT OF RELATED CASES

Defendants-Appellees are unaware of any related cases under Local Rule 28-2.6.

Dated: February 16, 2023

Respectfully submitted,

*/s/ Kim M. Watterson*
Kim M. Watterson

## CERTIFICATE OF COMPLIANCE

1.      This Answering Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32-1 because it contains 9,987 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This Answering Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point CG Times.


Dated: February 16, 2023

Respectfully submitted,

*/s/ Kim M. Watterson*
Kim M. Watterson

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 16, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: February 16, 2023

*/s/ Kim M. Watterson*
Kim M. Watterson

- 46 -